UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

NEW JERSEY ENVIRONMENTAL FEDERATION,

       Plaintiff,

v.                                                              Civil Action No. 05-143 (KSH)

MONROE TOWNSHIP,                                                **OPINION**

       Defendant

**KATHARINE S. HAYDEN, U.S.D.J.**

New Jersey Environmental Federation ("NJEF") has sued Monroe Township ("Monroe") pursuant to 42 U.S.C. § 1983 alleging Chapter 77 of the Monroe Township Code ("ordinance"), which regulates canvassing within the township, violates the first and fourteenth amendments. Both parties have moved for summary judgment on the constitutionality of the ordinance. (D.E. 26, 29.)

**BACKGROUND**

NJEF is a "not-for-profit environmental advocacy organization" that has canvassed door-to-door throughout New Jersey for nearly 20 years "to lobby on behalf of a broad environmental agenda." (Pl. Br. Ex. A (Goldsmith Aff. ¶ 2).) Canvassing is the primary means by which NJEF "meet[s] citizens, distribute[s] information to them, and encourage[s] them to sign petitions, contact public officials, vote, and join NJEF as members." (Goldsmith Aff. ¶ 3.) "The financial support solicited during the canvass is the principal source of funds available to [NJEF] to support the educational and participatory purposes of the canvass." (Goldsmith Aff. ¶ 4.) The organization canvasses around the state throughout the year. (Goldsmith Aff. ¶ 5.) Almost all of its canvassing "is done between 4:00 p.m. and 9:00 p.m., Monday through Friday." (Id.)

1

Chapter 77 of the Monroe Township code governs canvassing within the township. (Pl. Br. Ex. B (ordinance).) The township's goals in regulating canvassing are expressed in the ordinance:

> SECTION 1.  This ordinance is adopted with the intent to regulate the distribution of certain materials, peddling, soliciting and related activities within the Township of Monroe and the registration of persons engaged in such activities is necessary so that the identity of persons going from door to door or distributing materials within the municipality may be established, so that general regulations may be more effectively enforced, for the protection and maintenance, health, safety and welfare of the inhabitants of the Township, and to prevent dishonest business practices and dishonest solicitation of funds.

(Ordinance § 1.)  The ordinance requires anyone wishing to canvass to file an application to register, pay an application fee, and obtain a registration certificate.  (Ordinance § 3.)  The applicant must submit a "sworn written application" giving identifying information as well as a statement of the reason for canvassing, name of employer, the length of time the certificate is needed, if a vehicle will be used, its make and license number, and whether the applicant has been convicted of a crime. (Ordinance § 5.)  Thereafter the ordinance provides:

> SECTION 6.  Investigation of applicants.  The Township Clerk, or other person designated by resolution of the Township Council, may make such investigation as he shall deem necessary under the circumstances to verify information set forth in the application for registration.

(Ordinance § 6.)

Lt. Anthony S. Cook ("Cook"), commander of the criminal investigation division of the Monroe police department, testified in his deposition that he does a "local records check" to determine if the applicant (only the applicant, not every person canvassing) has a criminal background. (Cook Dep. 5:2-5, 11-15; 6:8-17, Sept 22, 2005.)  He reports his findings to the Chief of Police. (Cook Dep. 6:20-23.)

If the application is found satisfactory by the township council,[1] the clerk issues a registration certificate.  (Ordinance § 7A.)  "If any application is found unsatisfactory by the

---

[1] It is unclear from the record how the application moves from the police background check to its presentation before the council.

2

Township Clerk, he shall notify the applicant by mail within ten (10) days after application is made that the application is disapproved and shall deny the applicant any registration certificate." (Ordinance § 7B.)

After a registration certificate is issued, the ordinance sets forth various regulations that must be followed:

> SECTION 11.  General regulations.  No person or certificate holder shall:
> A.  Peddle, solicit, or distribute merchandise except between the hours of 8:00 a.m. and 9:00 p.m. during the months of June, July and August and between the hours of 8:00 a.m. and 6:00 p.m. for all other months of the year, unless specifically having been invited into a house by the occupant or having made an appointment with a person previously.  No such business or activity shall be conducted on Sunday, provided that this prohibition shall not apply to the sale of ice cream.

(Ordinance § 11A.)[2]  The ordinance exempts certain groups from paying the application fee and, "in the discretion of the Township Clerk, [from being subject to] the application and/or investigation procedures."  (Ordinance § 12.)  But these groups must still comply with all of the other provisions of the ordinance.  Id.

NJEF contacted Monroe in November 2004 about canvassing in the township between 4 p.m. and 9 p.m. and was advised that it could only canvass until 6:30 p.m.  (Compl. ¶¶ 4-5.)  NJEF filed the instant action on January 10, 2005 (D.E. 1), raising first amendment challenges, and Monroe moved to dismiss on the basis that the issue was settled in 1992 during litigation between Monroe and New Jersey Citizen Action.  (D.E. 5.)  Judge John Lifland, who was originally assigned to the case and has since retired, denied the motion.  (D.E. 8.)  In June 2006, NJEF moved for partial summary judgment on the constitutionality of the ordinance (D.E. 13), while Monroe cross-moved for declaratory judgment to declare the ordinance constitutional (D.E. 14).  While the motions were pending, the case was reassigned to this Court.  (D.E. 18.)  The Court denied both motions without prejudice to allow the parties to file new motions in light of the Third Circuit's decision in Service

---

[2] Section 11A of the Ordinance was amended on July 9, 1992 pursuant to Ordinance 0-7-92-023 to this current version.  The original version did not include extended evening hours in June, July, and August.  (See Pl. Br. Ex. B.)

Employees International Union, Local 3 v. Municipality of Mt. Lebanon, 446 F.3d 419 (3d Cir. 2006). (D.E. 24.) Thereafter, both parties moved for summary judgment on the constitutionality of the ordinance. (D.E. 26 and 29)

### STANDARD

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); N.J. Env't Fed'n v. Wayne Twp., 310 F. Supp. 2d 681, 691 (D.N.J. 2004)(Bassler, J.)(applying standard to summary judgment motion on similar canvassing ordinance). The record before the Court consists of the depositions of Lt. Anthony S. Cook (Pl. Br. Ex. C) and municipal clerk Sharon Doerfler (Pl. Br. Ex. D), the affidavits of Sharon Doerfler (Pl. Br. Ex. E) and Amy Goldsmith, state director of NJEF (Pl. Br. Ex. A), the certification of Richard Rafanello (D.E. 29-2), and the ordinance itself.

### DISCUSSION

NJEF claims that the registration provisions (§§ 3, 4, 5, 6, 7) and the curfew provision (§ 11A) impermissibly infringe on its first amendment rights. Monroe argues that the Court should not consider the constitutional challenges because (1) NJEF never challenged the registration provisions in its complaint and (2) NJEF's challenge to the curfew provision is an improper attempt to open the already settled 1990 litigation between Monroe and New Jersey Citizen Action. Substantively, Monroe claims the ordinance contains content-neutral and reasonable time, place and manner restrictions on canvassing activities.

Courts afford a high level of first amendment protection to canvassers due to the important role of canvassing in spreading ideas. See, e.g., Watchtower Bible and Tract Soc'y of N.Y., Inc. v. Vill. of Stratton, 536 U.S. 150, 160-62 (2002) (discussing the history of canvassing restrictions). This protection applies even if the canvassers solicit for funds. Vill. of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 633 (1980)("[O]ur cases long have protected speech even though it is in

4

the form of . . . a solicitation to pay or contribute money." (internal quotation marks and citations omitted)). But canvassing is subject to reasonable governmental regulation. Pa. Alliance for Jobs & Energy v. Council of Munhall, 743 F.2d 182, 185, 187 (3d Cir. 1984)(upholding "time of day" restriction as precisely tailored to address interests of municipalities with "significant incidence of burglary and home invasion"). The law places on Monroe "the burden of showing that the benefit to be gained from the ordinance provides reasonable justification for its considerable burden on First Amendment values," and mere conjecture is insufficient. Mt. Lebanon, 446 F.3d at 428. In addition to examining the face of the ordinance, the court may take into account the governing body's own interpretation and enforcement of the ordinance. See Forsyth County v. Nationalist Movement, 505 U.S. 123, 131 (1992).

**A. Does the Registration Process Constitute a Prior Restraint on Speech?**

NJEF argues that Monroe's registration process is unconstitutional because it fails to provide any justification for requiring canvassers to register with the township. (Pl. Br. 3.) Monroe argues that (1) NJEF should be barred from challenging these provisions because it did not raise the issue in its complaint; (2) the registration process is a "simple, straight forward process to ensure that known criminals who apply for a canvassing permit are not permitted to canvass in the Township"; and (3) Monroe has never rejected an application. (Def. Br. 9, 12.)

As to Monroe's first contention, the Court disagrees. NJEF alleges in its complaint that the ordinance "contains other provisions that substantially burden and interfere with the right" to canvass, which include "giving Defendant an unbridled discretion to deny and revoke permission to canvass." (Compl. ¶ 6.) Also, the final pre-trial order sets forth the issue of "[w]hether the ordinance is unconstitutional because it fails to constrain the discretion of defendant's implementing officials." (D.E. 20.) So Monroe has had ample notice of NJEF's intention to challenge the registration provisions.

5

As indicated, the Court has sought additional briefing on this issue, based on the Third Circuit's decision in <u>Service Employees International Union, Local 3 v. Municipality of Mt. Lebanon</u>, 446 F.3d 419 (3d Cir. 2006). (<u>See</u> D.E. 24.) In that case, a local labor organization sought to canvass several towns in Pennsylvania, including Mt. Lebanon, which had passed an ordinance that required canvassers to register with the police department before they could hand out written materials or discuss issues of "public or religious interest" with town residents.[3] <u>Id.</u> at 421. In justifying the requirement, the municipality cited government interests in crime and fraud prevention. <u>Id.</u> at 428.

The Third Circuit determined the registration provision burdened first amendment expression, quoting the Supreme Court's decision in <u>Watchtower</u>.

> The mere fact that the ordinance covers so much speech raises constitutional concerns. It is offensive—not only to the values protected by the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so. Even if the issuance of permits by the mayor's office is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition.

<u>Mt. Lebanon</u>, 446 F.3d at 426 (quoting <u>Watchtower</u>, 536 U.S. at 165-66). The court noted that the ordinance burdens those who wish to support causes anonymously, those who object to licensing of speech on principle, and those who wish to spontaneously speak to their neighbors about political or social issues. <u>Id.</u> at 426-27. The court found Mt. Lebanon's fraud rationale unpersuasive because a mere interest in preventing fraud does not support an ordinance that infringes upon the political and religious speech rights of citizens. <u>Id.</u> at 427. As to crime prevention, Mt. Lebanon offered evidence "of crimes committed by solicitors and canvassers in surrounding communities and across the nation." <u>Id.</u> at 428. But the court found it failed to make "a critical showing: that requiring registration of individuals who distribute written material door-to-door or who canvass to discuss

---

[3] Mt. Lebanon's ordinance also had provisions regulating solicitation for contributions. But the court did not address them because the plaintiff did not have standing to challenge this part of the ordinance. <u>Mt. Lebanon</u>, 446 F.3d at 425.

6

issues of religious or public interest is likely to have a material impact on the incidents of burglary, violent crime or other crime in the municipality." Id. The court noted that it had "never accepted mere conjecture as adequate to carry a First Amendment burden," and that Mt. Lebanon failed to meet its burden of "showing that the benefit to be gained from its ordinance provides reasonable justification for its considerable burdens on First Amendment values." Id. (quotations omitted).

> Here, as in Watchtower, those intent on burglary or violent crime can easily avoid the registration requirement and accomplish their mission by asking for directions or to use the telephone, and by refraining from distributing written materials. Alternatively, they can frustrate the ordinance's effectiveness by registering under a false name. More importantly, however, here as in Watchtower, we think it "intuitively implausible to think" that those determined to commit such crimes will comply with the registration requirement. After all, if they are not deterred by the substantial criminal penalties which exist for burglary and violent crime, it is not reasonable to expect that they will alter their behavior because of a $300 fine for failing to register.

Id. (footnote omitted). The decision also noted that "[t]he availability of direct punishment for crime has caused the Supreme Court to repeatedly reject government arguments that canvassing regulations are narrowly tailored to serve anti-crime interests." Id. at 428 n.7. On this basis, the court concluded Mt. Lebanon's ordinance failed first amendment scrutiny. Id. at 429.

Monroe appears to be advancing a crime prevention rationale for the registration provisions. Lt. Cook testified that the registration and background checks are done to determine if an applicant has a criminal background, but no check is done on the other canvassers in the group. (Cook Dep. 5:2-5, 11-15; 6:8-17.) Sharon Doerfler testified that registration serves a safety rationale and enables police to reassure residents who call that any canvassers are authorized to be there. (Doerfler Dep. 19:14-25, Sept. 22, 2005.) But like Mt. Lebanon, Monroe "fails to make a critical showing: that requiring registration of individuals who distribute written material door-to-door or who canvass to discuss issues of . . . public interest is likely to have a material impact on the incidents of burglary, violent crime or other crime in the municipality." Mt. Lebanon, 446 F.3d at 428. Monroe does not offer any evidence of crimes committed by canvassers.

7

Instead, Monroe argues that Mt. Lebanon is distinguishable because the application here is filed with the Township Clerk and not with the police. (Def. Br. 12.) But this is a distinction without a difference: in Watchtower, on which the Third Circuit relied, the permit was issued by the mayor's office. See 536 U.S. at 154. Quoting Watchtower, the Mt. Lebanon decision noted that "[e]ven if the issuance of permits by the mayor's office is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition." Mt. Lebanon, 426 F.3d at 426 (quoting Watchtower, 536 U.S. at 166). It is the idea of registration itself that offends first amendment principles absent a showing that the regulation is precisely tailored to a legitimate government interest. Those who wish to speak anonymously, spontaneously, or object, on patriotic or religious grounds, to telling the government what they intend to say are burdened by any provision which requires them to register with the government, regardless of which official or office requires them to register. See Mt. Lebanon, 446 F.3d 426-27. The registration provision impermissibly burdens NJEF's first amendment rights.[4]

**B. Is the Curfew a Valid Time Restriction?**

The government can impose reasonable time, place and manner restrictions on door-to-door canvassing. Pa. Alliance for Jobs and Energy, 743 F.2d at 185. "For a time, place and manner restriction to be valid, it must meet three criteria: (1) the restrictions must not make any reference to the content of the regulated speech; (2) the restrictions must serve a significant government interest; and (3) the restrictions must 'leave open ample alternative channels for communication of the information.'" N.J. Env't Fed'n v. Wayne Twp., 310 F. Supp. 2d 681, 691 (D.N.J. 2004)(Bassler, J.) (citing Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647-48 (1981)). See also

---

[4] NJEF also claims that there is no fixed time limit within which Monroe must issue a permit and the ordinance does not constrain officials' discretion to deny a certificate. (Pl. Br. 7-8.) Since the Court has found Section 7 unconstitutional it is unnecessary to address the propriety of the breadth of official discretion.

8

Pa. Alliance for Jobs and Energy, 743 F.2d at 185. Any regulations "must be precisely drawn to serve the interests they are designed to further." Id. at 187.

   1. Does the Curfew Provision Serve Significant Government Interests?

Monroe's curfew provision, section 11A of the ordinance, prohibits canvassing after 6 p.m. except during the summer months. Monroe proffers three purposes for the curfew provision, which appear in the ordinance's statement of purpose and were the subject of deposition testimony from city workers: (1) crime prevention; (2) safety of canvassers and the public; and (3) the privacy interests of residents. (Def. Br. 8.)

   a. Crime Prevention

In its first section, the ordinance sets forth as one of its purposes the "the protection and maintenance, health, safety and welfare of the inhabitants of the Township." (Ordinance § 1.) Monroe asserts that the curfew provision furthers its interest in preventing crime because Monroe is "largely comprised of senior citizens [who] are concerned for their safety, especially at night. In enacting the canvassing ordinance, Monroe was attempting to limit solicitors and canvassers to daylight hours." (Def. Br. 8.) NJEF claims that Monroe offers no evidence that the ordinance protects its citizens from criminal activity. (Pl. Br. 4.)

Curfew provisions that are aimed at crime prevention can be permissible time, place and manner restrictions. See Pa. Alliance for Jobs and Energy, 743 F.2d at 187. Significantly, the Third Circuit requires more than a mere assertion that a curfew provision prevents crime. In N.J. Citizen Action v. Edison Twp., 797 F.2d 1250, 1258 (3d Cir. 1986), the court addressed curfew provisions that prohibited canvassing after 5 or 6 p.m. during the week, and found that defendants "produced no evidence to support a correlation between canvassing and crime, no evidence that a canvasser had ever committed any crime in these municipalities other than a violation of an anti-canvassing ordinance, no evidence that the municipalities face a heightened crime rate, and no evidence of the experiences of or studies conducted by other towns." Id. at 1258. Monroe has offered nothing

beyond a mere assertion that the ordinance prevents crime, which is clearly insufficient to meet the burden Edison requires.

      b.   Safety of the Canvassers

Describing itself as "a semi-rural community without an extensive network of sidewalks and street lighting," Monroe claims that the regulation furthers its interest in keeping the canvassers safe by restricting them from walking in "dark areas without sidewalks." (Def. Br. 8.) Lt. Cook testified in his deposition that the curfew protects canvassers from "walking door to door in the dark," especially in the fall and winter months. (Cook Dep. 8:15-18.) He said that canvassers could have difficulty walking "depending on how people have their walk slated," and there is potential for accidents from tripping or traffic. (Cook Dep. 8:20-9:2.) NJEF counters that Monroe has not "produced a single fact to show the ordinance's effect on public safety." (Pl. Br. 4.) NJEF claims that its members have canvassed "all over the state in the last 20 years, including many municipalities like Monroe and none of the thousands of citizens who have canvassed on NJEF's behalf has ever suffered injury or criminal attack while canvassing." (Goldsmith Aff. ¶ 8.)

Monroe fails to produce evidence to support a safety rationale, and even were there some evidence, there are less restrictive ways of addressing safety concerns. Judge Bassler, addressing a similar curfew provision,[5] noted in New Jersey Environmental Federation v. Wayne Township that the township's "legitimate interest in protecting the safety of canvassers can be better served by less intrusive measures," for example, by "requir[ing] all canvassers to wear reflective clothing or carry flashlights." 310 F. Supp. 2d at 696 (emphasis omitted). Monroe fails to demonstrate that the curfew provision is precisely drawn to achieve the goal of canvasser safety.

      c.   Privacy

---

[5] Wayne Township ordinance § 60-7(B) permitted canvassing from 10 a.m. until one-half hour after sunset. Wayne, 310 F. Supp. at 687.

Monroe argues it has an interest in protecting "the privacy interest of its citizenry to be free from knocks on the door in the evening hours of non-summer months." (Def. Br. 8.) The only reference to privacy in the record is the deposition testimony of Cook that "annoyance to the township's residents is the main reason" for the regulation. (Cook Dep. 9:10-11.) He testified that residents "would be annoyed with someone banging on [their] door at 9 p.m.," especially families with young children. (Cook Dep. 8:5-9.)

NJEF asserts that Monroe has from time to time received a few complaints about canvassers, but argues "few citizens actually object to issue and electoral canvassing." (Pl. Br. 3-4.) NJEF's state director Amy Goldsmith states in her affidavit:

> [O]ur experience is that citizens consistently welcome hearing from us at their door and the extent of the welcome is greatest between 6:00 and 9:00 p.m., regardless of whether it is light or dark. That support is deep enough and broad enough that year after year we raise enough money to canvass nearly 400,000 homes in New Jersey and have become an effective political voice at the local, state, and national levels.

(Goldsmith Aff. ¶ 6.)

Municipalities may make regulations "aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest." Martin v. City of Struthers, 319 U.S. 141, 144 (1943). But the Third Circuit, while recognizing the importance of this interest, struck curfew provisions similar to Monroe's on grounds that they "goes beyond the usual hours of rest by prohibiting canvassing in the early evening." Edison, 797 F.2d at 1258.

> Where, as here, the record shows that many residents do not object to and indeed some warmly receive canvassers during the evening, it is difficult to sustain a conclusion that a complete ban of evening solicitation is "precisely tailored" or that the interest of some residents in privacy should overcome the important First Amendment rights of door-to-door canvassers and solicitors.

Id. NJEF does concede that there are some residents who object to being visited at their doorsteps. (Pl. Br. 3-4.) But even if some residences are bothered by canvassing, Edison sets forth less restrictive means to protect residents' privacy. 797 F.2d at 1258. Residents can post no-soliciting signs, or add themselves to no-soliciting lists. Id. See also Wayne, 310 F. Supp. 2d at 696. They can

also "refuse to engage in conversation with unwelcome visitors," which the Supreme Court found to be sufficient to protect the unwilling listeners' interests. Watchtower, 536 U.S. at 168. Monroe has failed to demonstrate how the ordinance is precisely drawn to protect the privacy interests of its residents.

2. Alternate channels of communication.

Under the applicable test, even if the ordinance were precisely drawn to further a significant government interest, it would still have to leave open ample alternative channels of communication to withstand constitutional scrutiny. "[T]he inquiry here is not merely whether alternatives exist to door-to-door solicitation in the evenings, but also whether those alternatives constitute an adequate and practical opportunity to convey the same information." Edison, 797 F.2d at 1261. Goldsmith states in her affidavit, "If we were not able to canvass until 9:00 p.m., canvassing would serve little purpose and we would not be able to afford to do it. The reason is simply that before about 6:00 p.m., too few adults are home to make canvassing worthwhile." (Goldsmith Aff. ¶ 7.)

In response, Monroe asserts, "Plaintiff is entitled to do exactly what it wishes three months out of the year. For the remaining nine months, Plaintiff is still permitted to canvass ten (10) hours per day and the cut off time is moved up from 9:00 p.m. to 6:00 p.m." (Def. Br. 2.) Apparently Monroe is contending that being able to canvass until 9:00 p.m. for three months of the year is a suitable alternative channel of communication.

Courts have not been persuaded by this argument. The Edison court struck down similar curfew provisions because "there [was] no alternative channels of communication that adequately serve important First Amendment rights." Edison, 797 F.2d at 1262. The court expressed its concern that prohibiting door-to-door canvassing in the evening would effectively eliminate the ability of some groups to spread their message: "The economic viability of these grass roots organizations is sufficiently tenuous that the use of more expensive means of reaching the public

12

such as direct mail would be prohibitive to their continued operations. Plaintiffs could not survive economically if canvassing was limited to hours of low home occupancy." <u>Edison</u>, 797 F.2d at 1261. The <u>Wayne</u> court made a similar finding, concluding that "NJEF's speech . . . will be silenced by the [Wayne] Ordinance." 310 F. Supp. 2d at 698. NJEF offers uncontradicted record evidence that it cannot financially sustain its work if it cannot canvass into the evening.

From this record, and given the holding in <u>Edison</u> regarding similar curfew restrictions, this Court concludes that the curfew provision in the Monroe ordinance is not precisely drawn to further Monroe's interests and does not leave open ample alternative channels of communication. As such, the curfew is an invalid time restriction.

    C. **<u>Is NJEF Bound by the 1992 Settlement Agreement?</u>**

Monroe argues that it settled a dispute with New Jersey Citizen Action ("NJCA") in 1992, which binds NJEF insofar as it contests the curfew provisions in the ordinance. In 1990, NJCA, represented by Robert Westreich, NJEF's attorney on this case, sued Monroe, challenging the constitutionality of the curfew provisions in the ordinance. (Rafanello Cert. ¶ 3 and 4.) (Docket # 90-cv-3435.) NJCA executed a written release as part of the settlement. (Rafanello Cert. ¶ 5, Ex. A.)

Monroe contends that its agreement with NJCA was "intended to settle a contemplated lawsuit threatened by" NJEF. (Rafanello Cert. ¶ 6.) As evidence, Monroe offers a letter dated April 24, 1992 from its attorney, Richard Rafanello, to the mayor and township council, which states:

> Importantly, the settlement pertains not only to the lawsuit filed by Robert Westreich, Esq. on behalf on NJCA, but it also pertains to the pending lawsuit NJEF (New Jersey Environmental Federation) authorized Mr. Westreich to file as a result of our recently denying NJEF the right to canvas beyond 6:00 p.m.
> It is also important to note that NJCA's concession regarding late night canvassing other than in the months of June, July and August applies not only to NJCA, but to its affiliates, including NJEF.

(Rafanello Cert. Ex. B.) Rafanello also states:

> During the pendency of this litigation, I had numerous telephone conversations with Mr. Westreich concerning settlement of the 1990 litigation. During the 1990 litigation and the related settlement discussions, Mr. Westreich advised that he had

> been authorized to file a similar suit on behalf of [NJEF] but would not do so if the Citizen Action matter was settled. Accordingly, no action was ever filed.

(Rafanello Cert. ¶ 8.)

NJEF denies it reached any agreement for several reasons. To begin with, the NJCA release only included the summer months and here, NJEF wants to canvass the entire year during the evening hours. Also, NJEF points out that (1) it was not a party to the 1990 litigation; (2) it was not a party to the 1992 settlement agreement; and (3) it "received nothing from the settlement." (Pl. Reply Br. 6.) "What there was, was a handshake between defendant's counsel and Plaintiff's counsel that [Mr. Westreich] would not rush back to Court . . . ." (Pl. Reply Br. 6.)

The issue was already presented to the Court and ruled upon. The following facts were before Judge Lifland on Monroe's motion to dismiss: Monroe and NJCA signed a release which called for Monroe to pay $60,000 and to amend the ordinance to permit "New Jersey Citizen Action to canvass door-to-door until 9:00 p.m. weekdays during the months of June, July and August."[6] (Rafanello Cert. Ex. A. (Release 2(a)-(b).) NJCA agreed to release all its claims and keep the agreement confidential. (Rafanello Cert. Ex. A. (Release 2(a), (c).) The release was signed by NJCA's executive director Phyllis Salowe-Kaye. (Rafanello Cert., Ex. A.) Judge Lifland noted that "the Release executed by the parties in the 1990 litigation does not reference NJEF in any way, and NJEF was not a party to that action." (D.E. 8 (Memorandum and order at 2.)

> Counsel for Plaintiff, Mr. Westreich, acknowledges providing an assurance in 1992 to Monroe that it would not find itself quickly in court again on the same constitutional challenge in the name of NJEF. Westreich characterizes that assurance as a courtesy having no set duration, not reduced to writing, and cites changed circumstances that necessitated the instant action.

(Memorandum and order at 3.) Judge Lifland concluded that whether the "apparent agreement is valid and binding at this time cannot be decided on a motion to dismiss under Rule 12(b)(6)." (Memorandum and order at 3.)

---

[6] Section 11A of the ordinance was amended to comply with the settlement. See n.1, supra.

State law governs the construction and enforcement of a settlement agreement. Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 349 (D.N.J. 1996)(Wolfson, J.)  While New Jersey has a strong public policy favoring settlement of cases, see Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), the New Jersey Supreme Court has not bound persons or entities who are not parties to an action nor in privity with the settling party.  See Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou, 180 N.J. 334, 349 (2004)(finding settlement made pursuant to N.J.S.A. 34:15-20 did not include plaintiffs because plaintiffs were not parties to agreement).  Monroe has not established that NJEF was a party to the 1992 settlement agreement or in privity with NJCA.  The release it offers as proof of settlement does not contain NJEF's name or signature.  (Rafanello Cert. Ex. A.)  The only parties listed on the release were Monroe and NJCA.  In addition, a review of the court's docket shows that NJEF was never a party to the 1990 suit.  (Docket # 90-cv-3435.)  Most important, Monroe has not presented the Court with any evidence beyond what it presented to Judge Lifland in the motion to dismiss.  While it may be true that there was a "handshake" agreement between Westreich and Rafanello that Westreich would not rush back to court with another suit, there is no evidence showing that NJEF agreed not to file suit if the NJCA matter settled.  As such, NJEF is free to assert this challenge to the ordinance insofar as its interests are affected.

## **CONCLUSION**

Two aspects of Monroe's canvassing ordinance violate the first amendment: the registration provisions (§§ 3, 4, 5, 6, 7) and the curfew provision (§ 11A).  The Court enjoins enforcement of these provisions.  Monroe argues that if any portion of the ordinance is found unconstitutional, the remainder of the ordinance should survive.  (Def. Br. 12.)  The Court has only examined those provisions of the ordinance challenged and does not invalidate any unchallenged portion.

NJEF's motion for partial summary judgment is **granted**.  (D.E. 26).  Monroe's cross-motion for summary judgment is **denied**.  (D.E. 29).  An appropriate order will be entered.

Dated:  July 31, 2008

<u>/s/Katharine S. Hayden</u>
Katharine S. Hayden
United States District Judge
